DECLARATION OF LLOYD M. HARMON JR.

I, the undersigned, declare as follows:

that at or about 4:45 p.m. on December 13, 2006 I received a telephone call from Ms. Rande Ross stating that she was being threatened to be taken into custody by a deputy sheriff of the Sheriff's Department of the County of San Diego;

that Ms. Ross stated that she was being held at the Sheriff's substation behind the Rancho San Diego Shopping Center on Jamacha Road where she had gone to provide further information to the sheriff's department about the theft of controlled substance medication from her home days before; that Ms. Ross stated she spoke to a Deputy Sheriff Kerr who told her that she was taking up his time unnecessarily and that she had been in contact with the sheriff's department too many times in the previous days since the theft; that Deputy Sheriff Kerr threatened to take Ms. Ross to County Mental Health (Grossmont Sharp Hospital) for a Welfare & Institution Code section 5150 ("5150 hold") evaluation; that Ms. Ross then attempted to contact her personal physician, who knew her well, to have her physician speak to Deputy Sheriff Kerr, but her physician's office was closed; that thereafter Ms. Ross called me, apparently without the knowlege of Deputy Sheriff Kerr; that Ms. Ross spoke to me in a rational and coherent manner; that Ms. Ross stated that she did not say or do anything to warrant this threat by Deputy Sheriff Kerr since she was merely trying to provide the sheriff's department with additional information regarding the theft at her residence; that Ms. Ross stated that her dog was in the car and that she wanted me to make sure the dog was cared for if Deputy Sheriff Kerr followed through on his threat to place her on a "5150 hold."

that I asked Ms. Ross if I could speak to the deputy sheriff; that the deputy sheriff identified himself to me as Deputy Sheriff Kerr; that I informed Deputy Sheriff Kerr that I was Ms. Ross' attorney. and that I had been the County Counsel of the County of San Diego; that I requested Deputy Sheriff Kerr tell me what had happened and why he was threatening to take Ms. Ross into custody on a "5150 hold"; that Deputy Sheriff Kerr stated he did not know me and that, even if I was her attorney, the information regarding Ms. Ross was confidential and he would not discuss it with me;

that while Deputy Sheriff Kerr and I were talking on Ms. Ross' cell telephone, Ms. Ross, who could hear Deputy Sheriff Kerr, stated clearly in the background that she granted permission to Deputy Sheriff Kerr to discuss anythiing with me and that she waived all rights of confidentiality; that Ms. Ross repeated this permission a second time; that Deputy Sheriff Kerr refused to accept her permission and waiver and refused to speak to me regarding the circumstances supporting his threat to place Ms. Ross on a "5150 hold"; that Ms. Ross also stated in the background that she had done nothing to warrant her being taken into custody; that Deputy Sheriff Kerr, in a loud, belligerent and threatening voice, told Ms Ross to be quiet and that if she did not stop talking he would take her to the "jail"; Deputy Sheriff Kerr said to me that if I kept him on the telephone he could charge me with interfering with the duties of a police officer; that Deputy Sheriff Kerr hung up the telephone conversation was terminated;

that shortly thereafter, I received a telephone call from another deputy sheriff at the

Exhibit A



1

Sheriff's sub-station stating that Ms. Ross had been taken into custody by Deputy Sheriff Kerr and that this deputy sheriff had been called and arrived at the Ranch San Diego Shopping Center substation after Ms. Ross had been taken into custody; that the second deputy sheriff stated that Ms. Ross' automobile, with her small dog in it, was at the Rancho San Diego Shopping Center substation and that if someone did not pick-up the dog it would be turned over to the animal shelter; that I agreed to pick-up the dog and I arrived at the substation at approximately 6:30 -7:00 pm; that I met the deputy sheriff at such sub-station and, after providing identification, took custody of Ms. Ross' dog, and parked Ms. Ross' car in a parking space adjacent to the substation; that a security guard employed by the Rancho San Diego Shopping Center noted the circumstances so that Ms. Ross' automobile would not be towed;

that prior to my leaving the substation, Deputy Sheriff Kerr appeared at the substation; that Deputy Sheriff Kerr is a physically imposing man; that Deputy Sheriff gave me with his badge number, which I provided to Ms. Ross; that Deputy Sheriff Kerr stated that Ms. Ross was taken into custody for being beligerent;

that later that night I received a telephone call from Ms. Ross from the Grossmont Sharp Hospitall emergency room stating she had been placed on a "5150 hold" by Deputy Sheriff Kerr immediately following the earlier telephone call to me; that at the time Ms. Ross telephoned me from Grossmont Sharp Hospital she was waiting to be seen by the physician on duty for injuries she sustained to her arms and neck from Deputy Sheriff Kerr and was at that time was wearing a hard neck collar; that Ms. Ross expressed concern about her dog and I informed her that I had her dog in my possession; that during my conversations Ms. Ross was calm, composed, rational, and fully aware of all matters taking place.

that Ms. Ross appeared at my home at approximately 3:00 a.m. on December 14, 2006; that she informed me that she had been released from Grossmont Sharp Hospital, that the examining physician had found no reason to hold her on a "5150 hold" and that the allegations of Deputy Sheriff Kerr were unfounded; that she took a cab to my home because she did not have of her personal belongings such as the keys to her car or home or her handbag because Deputy Sheriff Kerr would not allow her to have them in her possession; that, in effect, Ms. Ross had been stranded after being discharged from the Grossmont Sharp Hospital emergency room; that Ms. Ross had come to my house to get her keys, purse and dog directly after being unable to contact me by telephone from the emergency room.

that Ms. Ross stated that she was in serious pain in her neck and arms from the rough handling of her by Deputy Sheriff Kerr when and after he placed her in handcuffs; that Ms Ross stated she was given a neck collar and anti-inflammatory medications at Grossmont Sharp Hospital after x-rays had been taken for these for injuries; that Ms. Ross appeared to be calm, rational, appropriate in demeanor, tired and in pain; that Ms. Ross showed me her discharge papers from Grossmont Sharp Hospital; that these records showed a diagnosis of cervical neck strain and sprain and the paperwork reflected the prescribed course of treatment and follow up; that there was no diagnosis of any mental condition in the hospital paperwork; that Ms. Ross stated that there had not been a legitimate reason for her to have been taken into custody and that was confirmed by the



2

medical and security personnel at Grossmont Sharp Hospital.

that I drove Ms. Ross and her dog to her car parked in Rancho San Diego Shopping Centerat the substation; thtat.we reached there at approximately 4:00 a.m on December 14, 2006; that during this drive, Ms. Ross informed me that Deputy Sheriff Kerr grabbed her and handcuffed her immediately following the time he hung up and finished talking to me on her cell phone; that Ms. Ross stated that Deputy Sheriff Kerr placed her in handcuffs behind her back, which she did not resist; that Ms. Ross stated that Deputy Sheriff Kerr told her she was under arrest for obstructing justice by calling her lawyer and that Deputy Sheriff Kerr was physically and verbally abusive and threatening to her throughout his contact with her; that Ms. Ross stated she was cooperative, emotionally controlled and compliant during the entire time prior to and while she was in his custody; that Ms. Ross further stated that she immediately informed Deputy Sheriff Kerr that she had a serious neck condition affecting an impinged spinal cord and that he stated he heard about it "ad nausum" and didn't care.

that Ms. Ross told me that Deputy Sheriff Kerr stated that he did not like things she was saying about those he referred to as: good upstanding members of the community who he is here to protect;" that Ms. Ross stated that Deputy Sheriff Kerr told her "It's about time you spent some time in a mental hospital" and that he would see to it that she was given medication "whether she wanted it or not"; that Ms. Ross stated that Deputy Sheriff Kerr told her she was under arrest, in addition to being on a "5150 hold", for obstructing the duties of police officer by taking up his time unnecessarily and for resisting arrest, and that there were other charges were being added to those; that Ms. Ross told me that Deputy Sheriff Kerr told her in a forceful manner that he would make sure she would do jail time for those offenses and stated that he had the power to do that; that Ms. Ross also stated that Deputy Sheriff Kerr repeatedly told her while she was handcuffed and in custody in the backseat of his patrol vehicle that, at any time he wanted to, he could throw her on the ground, step on her and taser her.

that Ms. Ross stated that hospital personnel at Grossmont Sharp Hospital commented on the behavior of Deputy Sheriff Kerr when they observed him at the time he dropped Ms. Ross off at the Grossmont Sharp Hospital emergency room; that such hospital personnel voiced their concern that she was brought in on a"5150 hold " in handcuffs and that she had not been permitted to have her personal property; that Ms. Ross stated she was going to try to arrange an appointment to see her personal physician as soon as the office opened that morning.

that Ms. Ross stated that she was no different with Deputy Sheriff Kerr than she was with

3

me on the telephone or in person or at Grossmont Sharp Hospital; that Ms. Ross was adament that there was no legitmate reason for her to have been taken into custody by Deputy Sheriff Kerr. that Ms. Ross inventoried her vehicle for property left behind and noticed that her cell phone had been broken, apparently following the time when she called me in the presence of Deputy Sheriff Kerr; that Ms. Ross was coherent, emotionally controlled, and appropriate at all times and did not show any signs of mental or emotional distress.

I, the undersigned, declare under penalty of perjury that the above is true and correct.

Executed in San Diego, California on March 9, 2007.

LLOYD M. HARMON JR., Attorney

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of San Diego } ss.

On March 09, 2007, before me, Georgia L. Welsh, Notary Public,
       Date                                 Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared Lloyd M. Harmon Sr.
                                           Name(s) of Signer(s)

☐ personally known to me

☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                                  Signature of Notary Public

[Notary Seal: GEORGIA L. WELSH, Commission # 1666774, Notary Public - California, San Diego County, My Comm. Expires May 14, 2010]

Place Notary Seal Above

——————— OPTIONAL ———————

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**
Title or Type of Document: Declaration of Lloyd M. Harmon Jr.

Document Date: March 09, 2007     Number of Pages: 4

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☒ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402   Item No. 5907   Reorder: Call Toll-Free 1-800-876-6827

5